WITTER, RESPONDENT, v. PHILLIPS COUNTY, APPELLANT.

(No. 8,119.)

(Submitted January 8, 1941.  Decided January 20, 1941.)

[109 Pac. (2d) 56.]

*Messrs. Fred C. Gabriel, James T. Harrison* and *George E. Hurd,* for Appellant, submitted a brief; *Mr. Hurd* argued the cause orally.

*Messrs. Speer & Hoffman,* for Respondent, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to recover $4,000 as the face value of warrants of the Saco Special Water Improvement Dis-

trict No. 1, together with interest. Judgment went in her favor and defendant appealed.

The facts involved are these: On May 9, 1916, upon petition and after proper preliminary steps had been taken the board of county commissioners of defendant county by resolution declared the creation of a special improvement district in the then unincorporated town of Saco for the installation of waterworks therein, and directed that the board install the proposed improvement. Payment for the improvements was made in warrants.

Plaintiff is the holder of warrants numbered 1 to 16, each in the sum of $250, which were issued on November 1, 1916, and registered on the same day and which were the first warrants issued by the district. Twenty interest coupons were originally attached to each warrant, payable on the first day of January of each year. Coupons from 1 to 16 on each warrant have been paid, but coupons numbered 17, 18, 19 and 20, maturing January 1, 1934, 1935, 1936 and 1937, respectively, are unpaid. These warrants matured on November 1, 1936. As work proceeded on the improvements other warrants were issued and registered from time to time after those held by plaintiff were issued and registered. All warrants contained this clause: "This warrant is payable from the collection of a special tax or assessment, which is a lien against the real estate within said Improvement District, as described in said resolution hereinbefore referred to."

Pursuant to Chapter 89, Laws of 1913, as amended by Chapter 142, Laws of 1915, which is the law in effect when the warrants were issued and which is now section 5249, Revised Codes, the warrants were payable in the order of their registration.

The record shows without dispute that the county treasurer in 1917, 1918 and 1919, pursuant to resolution of the board of county commissioners, paid warrants issued and registered after those held by plaintiff were issued and registered, aggregating in amount a sum much greater than sufficient to pay plaintiff's warrants. Plaintiff did not learn of this until in 1938. Owing

to tax delinquencies there are no funds now available in the special fund to pay plaintiff's warrants.

The first question before us is whether plaintiff may recover ▮ against the county for the acts of the county officers in paying warrants otherwise than in their order of registration to her detriment. It is, of course, elementary that, as a general rule, warrants payable out of a special fund cannot be made the general obligation of the county, but resort must be had to that fund only. We recognized this rule in the case of *Frank* v. *Butte & Boulder Mining & Lumber Co.*, 48 Mont. 83, 135 Pac. 904 (and see *State ex rel. Central Auxiliary Corp.* v. *Rorabeck*, ante, p. 320, 108 Pac. (2d) 601). However, recovery is sought here because of the wrongful diversion of the trust fund by the legal custodian thereof.

It has been held in this jurisdiction that when municipal special improvement district warrants have been paid out of the order of their registration, the city itself is liable to the warrant holders damaged thereby. (*Blackford* v. *City of Libby,* 103 Mont. 272, 62 Pac. (2d) 216, 107 A. L. R. 1348; and compare *State ex rel. Clark* v. *Bailey,* 99 Mont. 484, 44 Pac. (2d) 240.) This was also expressly held in *Matapan Nat. Bank* v. *City of Seattle,* 115 Wash. 596, 197 Pac. 789, and in *Red River Nat. Bank* v. *City of Fargo,* 14 N. D. 88, 103 N. W. 390; and see *Smith* v. *Boise City,* 18 Fed. Supp. 385, *Viehweg* v. *City of Mount Olive,* 298 Ill. App. 412, 19 N. E. (2d) 211, and *Reed* v. *Beczkiewicz,* 215 Ind. 365, 18 N. E. (2d) 789, 19 N. E. (2d) 465, and note in 107 A. L. R. 1348. The question before us is whether this rule applies when it is sought to hold the county for special improvement district warrants issued by an improvement district created by the county.

The general rule is that while a municipal corporation may be ▮ liable in certain instances for the wrongful acts of its officers, the same conclusion does not follow with respect to the county. The rule is stated in 7 R. C. L. 954, as follows:

"While a municipal corporation is liable to an individual in certain cases for a failure to discharge its corporate duties upon the ground that its powers have been granted at the special

solicitation and for the benefit of its citizens, and not so much to aid in the administration of the state government as for local advantage and convenience, still the law is well settled that counties being organized for public purposes, and charged with the performance of duties as an arm or branch of the state government, are never to be held liable in a private action for neglect to perform a corporate duty, or for acts done while engaged in the performance of such duties, or because they are not performed in a manner most conducive to the safety of its employees or the public, unless such liability is expressly fixed by statute. The rule is dictated by public policy, and the fact that counties are declared by statute to be municipal corporations does not change it in the absence of anything in the statute imposing any additional liability. The principal ground upon which it is held that counties are not liable for damages in actions for their neglect of public duty is that they are involuntary political divisions of the state, created for governmental purposes, and are organized without regard to the consent or dissent of the inhabitants. The theory upon which municipal corporations proper are held liable in such cases is that they are voluntary associations created and organized at the solicitation of, and with the free consent of, the inhabitants, under the laws of the state, and that the benefits accruing to the people by such incorporation compensate them for the liability."

This court has in effect recognized the distinction so far as the county is concerned, in the cases of *Territory* v. *Commissioners*, 8 Mont. 396, 20 Pac. 809, 7 L. R. A. 105, and again in *State ex rel. Shea* v. *Cocking*, 66 Mont. 169, 213 Pac. 594, 28 A. L. R. 772. To the same effect is *Leach* v. *Dinsmore*, 22 Cal. App. (2d) (Supp.) 735, 65 Pac. (2d) 1364.

We believe, however, that the rule of non-liability of the county cannot apply under the facts here. By Chapter 123, Laws of 1915, the boards of county commissioners were given power to create special improvement districts outside the limits of incorporated cities and towns in conformity with the provisions of Chapter 89 of the Laws of 1913. It is to be noted that

the county was not obliged to create such districts. Counties were simply given the authority to do so in the event that they voluntarily chose to do so. It is our view that when the board of county commissioners chose to create the district, the county placed itself in exactly the same position as a city which creates such a district, and that it assumed the same duties and obligations that are assumed by the city when it creates a special improvement district. Support for this conclusion is found by analogy in the cases of *Crawford* v. *Board of County Commissioners,* 1 Ohio App. 54, and *Hannon* v. *City of St. Louis,* 62 Mo. 313. The exception to the general rule is stated in 15 C. J. 569, as follows: "Also a county is liable for its torts when it is * * * performing special duties imposed on it with its consent, or voluntarily assumed by it." To the same effect is 20 C. J. S., Counties, section 215.

While the general rule is that a county may not be held liable for the wrongs of its officers, there are, as above noted, exceptions to this rule, and where it makes an unlawful or unauthorized use of funds there is liability upon the county. In *Comanche County* v. *Burks,* (Tex. Civ. App.) 166 S. W. 470, the court said: "It is first insisted that the court erred in over-ruling appellant's general demurrer. The contentions are that the petition on its face shows an unlawful and an unauthorized appropriation of the county's permanent school fund on the part of the commissioners' court, and that the county cannot be made responsible for the wrongs of its officers. It has been frequently held that in certain cases a county cannot be held liable in damages for the wrongs or negligence of its officers. (*Heigel* v. *Wichita County,* 84 Tex. 392, 19 S. W. 562, 31 Am. St. Rep. 63.) But this rule of non-liability is not of universal application. See 6 McQuillin on Municipal Corp. 2605, citing numerous cases where the rule has been limited. And we are of the opinion that the principle invoked has no application in this case. Counties, by the express terms of our statute (R. S. 1911, Art. 1365), are bodies corporate and politic and act by and through the commissioners' court composed of the county judge and of the commissioners from the several commissioners'

precincts provided by the law. The acts of the commissioners' court, therefore, in good faith performed within the scope, or apparent scope, of the powers committed to it under the Constitution and laws, are the acts of the county and not of the individual members composing the court."

This court, in the case of *State ex rel. Blenkner* v. *Stillwater County,* 104 Mont. 387, 66 Pac. (2d) 788, has held the county liable when it paid irrigation district warrants otherwise than in the order of their registration, and we see no difference in principle between that case and this.

The next point involved is based upon the contention that the ▮ statute of limitations bars recovery on the warrants in question. On this point it should be observed that a trust relationship existed between the county treasurer and the warrant holders. (*State ex rel. Central Auxiliary Corp.* v. *Rorabeck,* and *Blackford* v. *City of Libby,* both supra.) In such a situation the statute of limitations does not begin to run until there has been a breach of the trust and notice thereof given to the *cestui que trust.* The record reveals that plaintiff was a resident of Helena, and that she collected her interest coupons until 1934, the last interest payment being made on October 16, 1936. She corresponded with the county treasurer with reference to the payment of interest on the coupons but did not learn until in 1938 that warrants subsequently issued and registered had been paid out of the order of their registration. It is true that, had she made inquiry sooner, she could have discovered that fact.

▮ But it was not incumbent upon her to make inquiry concerning the matter. (*Northwestern Lumber Co.* v. *City of Aberdeen,* 44 Wash. 261, 87 Pac. 260.) She had a right to presume that the officers were performing their official duties (subd. 15, sec. 10606, Rev. Codes), one of which was to make a call for payment of outstanding warrants and give notice thereof, when there were funds on hand after paying interest, to pay the warrants or some of them in the order of their registration. (Sec. 5249, Id.) Even when default occurred in the payment of interest she did not learn more than the fact that

the fund was insufficient to pay the interest. She did not learn that the fund had been misapplied, nor did she have any reason to suspect that such was the case. Under the circumstances, her claim is not barred by any statute of limitations pleaded by the defendant.

The only remaining question is whether the plaintiff is entitled to recover interest in addition to the principal and interest represented by the coupons. The court was right in allowing the recovery of interest. The fund was wrongfully withheld from the plaintiff, and the plaintiff should, therefore, be entitled to recover interest. (*United States F. & G. Co.* v. *Clarke,* 190 Ga. 46, 8 S. E. (2d) 52; *Cook* v. *City of Staunton,* 295 Ill. App. 111, 14 N. E. (2d) 696; *Reed* v. *Beczkiewicz,* supra; *Conway* v. *City of Chicago,* 237 Ill. 128, 86 N. E. 619.)

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ANDERSON concur.